IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL WEIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:24-cv-00052-RJD |
| | ) | |
| ROBERT BLUM, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:[1]**

Plaintiff Michael Weis, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Graham Correctional Center ("Graham"), brought this action under 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Pinckneyville Correctional Center ("Pinckneyville") due to being unable to obtain a prescription for Lactaid. The original complaint was dismissed for failure to state a claim. (Doc. 9). Thereafter, Weis filed an Amended Complaint alleging that Defendants Christine Brown, M. Lively, Robert Blum, and Wexford Healthcare were deliberately indifferent in treating his dairy allergy. (Doc. 10). After threshold review of the Complaint, Weis was allowed to proceed on the following claim:

Count 1:  Eighth Amendment deliberate indifference claim against Robert Blum for failing to treat Weis' dairy allergy and/or failing to prescribe Lactaid for his symptoms.

---

[1] This matter has been referred to the undersigned, through the parties' consent, to conduct all proceedings including final entry of judgment pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. 18).

(Doc. 10, p. ). The Court also dismissed the remaining Defendants because Weis had failed to state a claim against them. (*Id.*).

This matter is now before the Court on Blum's Motion for Summary Judgment (Doc. 29). Blum submitted a memorandum in support of his motion that contains a Statement of Material Facts with proper citation to the record. (Doc. 30, pp. 2-13). Contemporaneously with the motion, Blum also filed a Rule 56 Notice advising Weis of the procedures set forth under Fed. R. Civ. P. 56 ("Rule 56") and Local Rule 56.1, and the consequences of non-compliance. (Doc. 31). Specifically, Weis was advised that under Rule 56 and Local Rule 56.1, a party opposing a motion for summary judgment and asserting that a fact is genuinely disputed must support the assertion with citation to particular parts of materials in the record, including page or paragraph number upon which the opposing party relies. (*Id.*). He was also advised that the Court is not required to consider any material not properly cited in a response to a Statement of Material Facts. (*Id.*).

Weis filed a response admitting 87 of the 113 paragraphs of Blum's Statement of Material Facts and disputing the remaining 26 paragraphs. (Doc. 32). While Weis responded to each disputed factual allegation, he failed to cite to the record in all but paragraphs 31, 34, and 39, in contravention of Rule 56(c) and Local Rule 56.1. *see* SDIL-LR 56.1(d) ("The disputed facts, or parts of facts, shall contain specific citation(s) to the record, including page numbers(s), upon which the moving party relies, where available."); SDIL-LR 56.1(g) (requiring the Court to "disregard any asserted fact that is not supported with a citation to the record, unless the factual basis for the assertion is clearly identifiable from the parties' related citations or permissible inference." Further, Weis' response did not include a Statement of Additional Material Facts.

In his reply, Blum sought that all but paragraphs 31, 34, and 39 of his Statement of Material Facts be deemed admitted under Rule 56(c)(1)(e), due to Weis' failure to adequately address the

disputed factual allegations. (Doc. 33). Weis submitted a supplement response, which did not cure those defects. (Doc. 34). Accordingly, Blum's factual allegations, except for paragraphs 31, 34, and 39, are deemed admitted, to the extent adequately supported by the cited record, as discussed in the Court's Findings of Facts. *See* Fed. R. Civ. P. 56(e) (if a party fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion); SDIL-LR 56.1(g) (requiring the court to deem admitted all material facts set forth in a Statement of Material Facts unless specifically disputed); *see also  Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) ("[W]e have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment."). The Court still views those facts in the light most favorable to Weis.

Weis also filed a Motion for Status and Request for Settlement (Doc. 36) to which Blum did not respond. For the reasons explained below, the Motion for Summary Judgment is **GRANTED** (Doc. 29), and the Motion for Status and Request for Settlement (Doc. 36) is **DENIED as moot**.

### Findings of Facts[2]

Weis has been in IDOC custody since September 2020. (Doc. 30, ¶ 1). He was initially housed at Madison County and Graham Reception and Classification Center through May 2021. (*Id.* at ¶¶ 2-3). He was then transferred to Pinckneyville, where he remained through October 2024. (*Id.* at ¶¶ 4-5). Blum has been a nurse practitioner licensed in Illinois since 2012. (*Id.* at ¶ 6). From 2017 to April 2025, Blum worked as a nurse practitioner at Pinckneyville. (*Id.* at ¶ 7).

---

[2] This section is based on Defendant's Statement of Material Facts. The Court has omitted factual allegations that are not material to its ruling.

In 2013, Weis was seen at Anderson Hospital for gastrointestinal issues, where he was diagnosed with either ulcerative colitis or irritable bowel syndrome. (*Id.* at ¶¶ 13-15). He was prescribed Prilosec, which he took once or twice, but discontinued because of side effects. (*Id.* at ¶¶ 15-16); (Doc. 32, p. 10). Weis believes that the doctor who performed the colonoscopy told him he "probably [has] a dairy allergy," but his medical records from Anderson Hospital do not chart a dairy allergy. (Doc. 30, ¶¶ 17-18). He further testified that a school nurse told him when he was a teenager that she thought he had lactose intolerance. (Doc. 30, ¶ 1; Doc. 30, pp. 63-64). However, Weis never had an allergy skin test, an allergy blood test, a dairy oral food challenge, or other testing to diagnose lactose intolerance. (*Id.* ¶ 20). No medical provider has ever told Weis that the complaints he attributes to dairy consumption (chest tightness, upset stomach, constipation, diarrhea, sweating) are actually caused by consuming dairy, and no doctor has ever prescribed him any medication for those symptoms. (*Id.* at ¶¶ 23-24). Before his incarceration, Weis was not taking any prescribed medications chronically. (*Id.* ¶ 19). He managed his dairy-related symptoms by avoiding dairy for the most part, and after 2005, by taking Lactaid "infrequently" when eating dairy. (*Id.* at ¶¶ 21-22).

Weis' initial booking questionnaire at the Madison County Jail states that Weis has known food or drug allergies to "sulfa [drugs containing sulfonamides] and shellfish," but no other major medical problems. (Doc. 30 at ¶¶ 25-26). It does not list a dairy allergy. (*Id.* at 27). While in custody at the Madison County Jail, Weis does not recall submitting any sick call requests related to gastrointestinal issues, a dairy allergy, or a lactose sensitivity. (*Id.* at 28-29).

On or about April 15, 2021, when Weis entered Graham Reception and Classification Center, he reported allergies to sulfa and shellfish, which were added to his Offender Medical Problem List. (Doc. 30, ¶¶ 30-31). Weis testified that at that time, he further reported a dairy

allergy, which, however, was not recorded. (Doc. 30, p. 139; Doc. 32, p. 10). On May 3, 2021, Weis had a physical examination with a physician assistant, who also listed only sulfa and shellfish allergies. (Doc. 30, ¶¶ 32-34). According to Weis, he reported his dairy allergy at that visit too, but it was not recorded again. (Doc. 30, p. 139; Doc. 32, p. 10). He believes the individuals who filled out those forms did not list his dairy allergy because they assumed it was just lactose intolerance. (Doc. 30, p. 139; Doc. 32, p. 10).

According to Blum's Declaration, lactose intolerance and dairy allergy are two separate and unrelated conditions. (Doc. 30, ¶ 74). Lactose intolerance is an inability to fully digest lactose, which can result in digestive problems when lactose is consumed. (*Id.*). Dairy allergy is a condition in which the immune system reacts to the proteins in milk and other dairy products. (*Id.*). People with a dairy allergy should avoid dairy foods. (*Id.*). To prescribe treatment for an individual in custody with either lactose intolerance or a dairy allergy, a provider would need to confirm the diagnosis through testing, which may require referral to a specialist. (*Id.* at ¶ 75).

After his transfer to Pinckneyville on May 10, 2021, Weis had an intake interview with a nurse.[3] (Doc. 30, ¶¶ 35-36). Weis does not know what conversations the nurse had with others about the interview or what the nurse did with the information Weis provided. (*Id.* at ¶ 37). On June 1, 2021, Weis had a nurse sick call visit at Pinckneyville for an unrelated medical issue. (*Id.* at ¶ 38). The medical note from that visit only indicates allergies to sulfa and shellfish (*Id.* at ¶¶ 38-39), but Weis argues he also reported a dairy allergy, which the provider failed to document. (Doc. 32, p. 10). Weis claims he dropped numerous sick call slips between May 2021 and December 2023 about his issue with dairy. (*Id.* at ¶ 41). Weis does not know who reviewed his

---

[3] Weis alleged in the Amended Complaint that he reported a milk allergy at that time. (Doc. 11, p. 11). However, this allegation has not been included in the parties' briefs.

sick call slips, or if the person or persons who reviewed them ever talked to anyone else about them. (*Id.* at ¶ 42).

In October 2022, Weis submitted a grievance seeking help with his dairy issue. (*Id.* at ¶ 43). Weis does not know whether anyone other than his counselor, the Grievance Officer, the Chief Administrative Officer, and the ARB ever reviewed his October 2022 grievance, or whether any of those individuals discussed it with others. (*Id.* at ¶¶ 44-45). On May 30, 2023, an Offender Medical History was obtained from Weis, and labs were drawn. (*Id.* at ¶ 46). No allergies were listed at that encounter either, but Weis argues he was not asked to report them. (*Id.* at ¶47; Doc. 32, p. 10).

On June 12, 2023, Blum saw Weis for a periodic physical examination. (*Id.* at ¶ 52). This was Weis' sole encounter with Blum. (*Id.* at ¶¶ 56-57). Per IDOC directive, physical examinations of individuals in custody are conducted upon admission, and at appropriate intervals thereafter during their period of custody based on age. (*Id.* at ¶ 53). Periodic physical examinations of individuals in custody include a medical history and a physical examination. (*Id.* at ¶ 54). Blum's encounter with Weis was not a sick call visit. (*Id.* at ¶ 55). Weis had not been evaluated by a nurse for his dairy issue or been referred for a primary care evaluation by a provider (physician, physician assistant, or nurse practitioner). (*Id.*). At the time, Weis understood that individuals in custody with a medical issue have a nurse sick call visit before possibly being referred to a provider. (*Id.* at ¶ 61). He expected that the same procedure would apply to his sick call requests regarding his dairy issues. (*Id.* at ¶ 62).

Weis' physical examination was normal. (*Id.* at ¶ 66). According to Blum, Weis did not report any health problems or other medical complaints, but self-reported having a dairy allergy and asked if he could have Lactaid chewable tablets sent to him from outside the prison. (*Id.* at ¶

67-69). According to Blum's Declaration, Lactaid is a dietary supplement containing lactase. (*Id.* at ¶ 70). Lactase treats lactose intolerance by replacing the enzyme (lactase) normally produced by the body that helps digest lactose. (*Id.*). Lactaid is not a dietary supplement that is prescribed by providers. (*Id.* at ¶ 71). In an effort to assist Weis in obtaining Lactaid chewable tablets, Blum charted that it was okay to have Lactaid sent in. (*Id.* at ¶ 72). However, he suggested that Weis speak to his counselor about having Lactaid sent to him from outside the prison because this was an issue for IDOC to determine. (*Id.* at ¶ 73). Given Weis' age, Blum also ordered a Fecal Immunochemical Test ("FIT") to screen for colon cancer. (*Id.* at ¶ 77). According to his Declaration, Blum did not diagnose Weis with a dairy allergy at that visit because such a diagnosis would have required testing and possibly a specialty referral. (*Id.* at ¶ 109). Blum did not deem Weis' self-report of dairy allergy an urgent or emergent condition. (*Id.* at ¶ 110). He further represents that he did not prescribe any care or treatment for Weis because Blum was not seeing him for any health problem or other medical complaint. (*Id.*).

Weis, on the other hand, argues, without proper citation to admissible records, that he believed his encounter with Blum on June 12, 2023, was in response to his sick call requests for his dairy issue because he had just had his annual examination on May 30, 2023. (Doc. 32, p. 11). He alleges that he did not learn that this was only a routine physical examination until later. (*Id.*). He testified that he did not know what Blum's understanding of the encounter was, what Blum did in preparation for it, or whether Blum reviewed Weis' prior medical records or talked with anyone else ahead of it. (Doc. 30, ¶¶ 64-65). Weis further disputes that he did not report any medical problems during his encounter with Blum. (Doc. 32, pp. 11-13). He argues, generally, that he discussed "the medical issues and discussed Lactaid as a remedy," citing Blum's medical note regarding having Lactaid sent to the prison. (*Id.*). He further argues, without citation to the record,

that before asking Lactaid to be sent to the prison, he had asked Blum to prescribe him Lactaid, but Blum told him that "IDOC did not use Lactaid but some other pill."  (*Id.* at p. 13). He argues, without citation to the record, that if providers "can prescribe Ibuprofen, they can prescribe and assign Lactaid or another replacement for such." (*Id.*).

Weis testified that, based on his encounter with Blum, he understood that there would be a couple of steps before he could be prescribed a medication for his dairy issue, including potential referral to a specialist and testing. (*Id.* at ¶¶ 76-77). He assumed that after his appointment with Blum, he would follow up with a provider regarding the FIT results and, if necessary, discuss his dairy issue again. (*Id.* at ¶ 78). He understood that individuals in custody are not assigned to a particular provider, so that he would not necessarily follow up with Blum about the FIT results or his dairy issues. (*Id.* at ¶¶ 79-81).

After his encounter with Blum, Weis spoke with his counselor, who told him he could not have Lactaid sent to him. (*Id.* at ¶ 85). Weis then submitted numerous requests to the Health Care Unit ("HCU") and filed a grievance dated July 31, 2023. (*Id.* at ¶ 90). In his response to his July 31, 2023, grievance, Weis was told that providers cannot write prescriptions for medications/supplements without a medical necessity determination. (*Id.* at ¶ 96). Weis argues that the medical-necessity requirement was satisfied when Blum noted that it was okay to send Lactaid to the prison, but gave him incorrect information on how to obtain it. (Doc. 32, p. 14).

Prior to being served with the Complaint in this case, Blum had no personal knowledge of whether Weis was permitted to have Lactaid sent to him from outside the prison, or how Weis was otherwise managing his self-reported dairy issue. (Doc. 30, ¶ 95). Weis does not dispute that. (Doc. 32, p. 5; Doc. 30, ¶¶ 93-94). Weis further testified that he does not know if Blum ever reviewed his July 31, 2023, grievance, who reviewed the numerous requests he sent to the HCU after his

counselor denied his request to have Lactaid sent to the prison, or who those reviewing the request may have spoken with about his requests. (Doc. 30, ¶¶ 91-92). He has no knowledge of whether Blum was involved in the decision not to have a follow-up appointment regarding his dairy issues after their June 12, 2023, encounter, or whether Weis was ever on Blum's treatment line again thereafter. (Doc. 30, ¶¶ 83-84). He testified that he did not think Blum was ignoring him and that Blum seemed genuinely eager to help with his dairy issue. He assumes that Blum "thought [Weis] could have Lactaid sent in." (Doc. 30, ¶¶ 87-88). He testified that since his encounter with Blum, he has come to understand that no one, including a doctor, can bypass the procedure to distribute medication by the Health Care Unit by having medication sent to the prison. (*Id.* at ¶ 86; Doc. 32, p. 14).

Weis admits he can manage his dairy issue by avoiding dairy. (Doc. 30, ¶¶ 97-98). While at Pinckneyville, Weis managed his dairy issues by trading food and purchasing non-dairy food through the commissary. (*Id.* at ¶ 99). He had a job the entire time at Pinckneyville, working seven days a week, and sometimes all day, and was able to perform his duties without issue. (*Id.* at ¶ 102-104).

### Summary Judgment Standard

Summary judgment is appropriate only when the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Ruffin- Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine

issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

The Eighth Amendment "'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Brown v. Osmundson*, 38 F.4th 545, 549-50 (7th Cir. 2022) (internal citations omitted). To succeed on his deliberate indifference claims, the plaintiff must "provide evidence, either direct or circumstantial," establishing that "he had an objectively serious medical need," which the defendants knew of but consciously disregarded. *Id.* at 550. "A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Foelker v. Outagamie County*, 394 F.3d 510, 512 (7th Cir. 2005).

As to the subjective component, mere negligence, civil objective recklessness, or "medical malpractice do[] not become a constitutional violation merely because the victim is a prisoner." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Rather, the defendant must have exhibited a conduct that approaches "a total unconcern for the prisoner's welfare in the face of serious risks" and is akin to criminal recklessness. *Brown*, 38 F.4th at 550; *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013).

Page **10** of **14**

The Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Further, "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.* Deliberate indifference implies that a defendant's medical judgment was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 395, 396 (7th Cir. 2006); *Plummer v. Wexford Health Sources, Inc.*, 609 Fed. Appx. 861, 2015 WL 4461297, *2 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments").

For instance, "[d]eliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers 'blatantly inappropriate' medical treatment, acts in a manner contrary to the recommendation of specialists, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (internal citation omitted). Further, a provider's "[f]ailure to provide necessary relief and delaying access to a qualified specialist can lead to prolongation of pain" and support a deliberate indifference claim. *Thomas v. Martija*, 991 F.3d 763, 771 (7th Cir. 2021) (citing *Goodloe v. Sood*, 947 F.3d 1026, 1032 (7th Cir. 2020); *Petties*, 836 F.3d at 731–32; *Conley*, 796 F.3d at 749). Yet, a mere delay in treatment is insufficient to show deliberate indifference. *Id.* at 769. Rather, the Court should look on "how serious the condition in question was, how easy it would have been to treat it, and whether it exacerbated an

Page **11** of **14**

injury or unnecessarily prolonged pain." *Id.* (quoting *Petties*, 836 F.3d at 730–31). "Delay need not be extreme; failing to provide a very easy treatment or accommodation can suffice, if unnecessary suffering resulted. *Id.* (citing *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004)).

Here, Blum argues that he is entitled to summary judgment on three grounds. First, he argues that Weis' dairy issue does not amount to an objectively serious medical need. Second, he claims that he was not deliberately indifferent because his sole encounter with Weis was a routine physical examination rather than a sick call visit to address Weis' dairy issue. He further argues that he was not involved in Weis' treatment thereafter and had been unaware that the facility did not permit the delivery of Lactaid to Weis. Finally, Blum claims that Weis has not offered any evidence that he suffered any harm from Blum's alleged deliberate indifference because he could still avoid the dairy-related issues by not consuming dairy. As explained below, the Court finds that, even assuming Weis' dairy-related issues amounted to an objectively serious medical need, the record does not support a finding that Blum was deliberately indifferent to it. Accordingly, the Court does not need to address whether Weis had an objectively serious medical need or suffered harm as a result of Blum's alleged misconduct.

Construing the facts in the light most favorable to Weis, the record shows that throughout his life, Weis avoided dairy-related symptoms by either avoiding dairy or by infrequently taking Lactaid when he did consume dairy. Thus, even assuming Weis' dairy issues amounted to an objectively serious medical need, it was one that could be adequately treated with Lactaid.

Weis accuses Blum of failing to prescribe Lactaid and instead incorrectly referring him to his counselor to obtain it. However, the record shows that Lactaid is not a prescription medication. Therefore, no reasonable jury could conclude that Blum was deliberately indifferent for failing to prescribe it. Weis alleges that some Ibuprofen medication can be prescribed while also being

obtained over the counter, but this allegation is not supported by admissible evidence. Even if that were the case, not prescribing a medication that can also be obtained over the counter would not amount to deliberate indifference as long as Blum believed that Weis could have access to that medication. Here, Weis testified that he did not think Blum was ignoring him, and that, at the time of the June 12, 2023, physical examination, Blum seemed like he genuinely wanted to help with Weis' dairy issue. He assumes that Blum "thought [Weis] could have Lactaid sent in." (Doc. 30, ¶¶ 87-88). Blum took one further step to assist Weis by noting in his chart that it was okay to have Lactaid sent to the prison. Accordingly, Blum's incorrect belief that Weis could obtain Lactaid by having it sent to the prison, at most, shows a negligent mistake that does not rise to the level of unconstitutional deliberate indifference. *See Reck*, 27 F.4th at 483 (quoting *Estelle*, 429 U.S. at 106) (explaining that deliberate indifference requires more than negligence or civil objective recklessness and noting that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner").

Weis further accuses Blum of failing to follow up after the counselor denied his request to have Lactaid sent to the prison. However, Weis fails to show that Blum had the culpable state of mind required to establish a claim of deliberate indifference. Even considering Weis' version of the events as established, the record shows that Blum's plan was to first see whether Weis would be allowed to have Lactaid sent to prison, and, if that plan did not work, to proceed to the next steps, which could involve testing and referral to a specialist. Here, the record is clear that Blum never became aware that Weis was not allowed to have Lactaid sent to the prison or that he was not scheduled for another medical visit for that need. There is nothing in the record indicating that Blum was privy to Weis' sick call letters or to his July 31, 2023, grievance, or that he was the individual responsible for scheduling medical appointments in Pinckneyville HCU. Because no

Page **13** of **14**

reasonable jury could conclude that Blum knew that Weis' dairy issue was still not addressed after the June 12, 2023, visit, he cannot be found to have knowingly disregarded Weis' dairy issues.

Accordingly, no reasonable jury could conclude that Blum was deliberately indifferent to Weis' dairy issues, and Blum is entitled to summary judgment as a matter of law.

### Conclusion

For these reasons, the Motion for Summary Judgment (Doc. 29) filed by Defendant Robert Blum is **GRANTED**. The Motion for Status and Request for Settlement (Doc. 36) filed by Michael Weis is **DENIED as moot**. This case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

**DATED: August 12, 2026**

**Hon. Reona J. Daly**
**United States Magistrate Judge**